McLean *et al.* v. McAllum *et al.*

[95 South. 309.   No. 22662.]

1. ADOPTION. *All antecedent agreements with relation to adoption merged with proceedings; if review of adoption proceedings not filed within two years after minor's majority, decree final.*

    The proceedings under section 299, Hemingway's Code, Laws 1910, chapter 185, to adopt children, are judicial in their nature and the petition and decree are the measure of right thereunder, and all antecedent agreements in relation thereto are merged in such proceedings, and it cannot be shown in a collateral suit that there were different agreements and understandings antedating said proceedings.   If the adoption proceedings do not reflect the real agreement, a bill, in the nature of a review, must be filed within two years after the minors attain legal age, and unless it is so done the decree becomes final, and all rights of the parties must be determined by the proceedings.

2. ADOPTION. *Will devising to adopted children one dollar is valid so far as adoption proceedings are concerned.*

    Where a petition for adoption recites "that it is petitioner's wish that said children may become his legal heirs, inheriting whatever the said petitioner may own at his death," and the decree thereon adjudged that said minors "shall be adopted as the legal children and heirs of the said petitioner, with full power to inherit his property as if they were born his children in lawful wedlock," the rights of the adopted children are the same as if they were actually children born in lawful wedlock; and the adopting parent has the same right to dispose of his property by will as he would have with children so born, and a will subsequently made, devising to the adopted children only one dollar each, is valid so far as the adoption proceedings are concerned.

Appeal from chancery court of Kemper county.

Hon. T. P. Guyton, Chancellor.

Bill by Willie McAllum and another against Putnam McLean, Administrator, and others.   From a judgment for plaintiffs, defendants appeal.   Reversed and dismissed.

*Baskin & Wilburn,* for appellant.

We submit, therefore, that the proceeding was simply one that legitimized the minors, so that they became capable of and were in point of fact heirs to the petitioner, just as much so as would his children have been if born in lawful wedlock. If we are correct in this conclusion, then it would seem clear that the appellees were not entitled to maintain the suit, for the reason that by the act of their father in legitimizing the children, they acquired no other or definite right than that of a legitimate child, and they were simply entitled to inherit as an heir such property as he might die seized of, provided he had not by will disposed of it to others.

If they, as his real children, though not legitimate, were in his custody and receiving his support as the bill alleges, they undoubtedly owed him their services, and which they thereafter gave him during their minority and while they remained with him; and there was nothing in the act of the children, assuming that they consented to the adoption, to constitute a valid consideration for any irrevocable contract that they should have the property of E. M. Mc-Allum at his death. *Aycock* v. *Hampton*, 84 Miss. 204, 36 So. 245; *I. C.* v. *Sanders,* 61 So. 309.

In a strict adoption proceeding, under the second phase of section 542 of the Code of 1906, it is contemplated that the child and its parent surrender to the adopting parent certain things in consideration of the adopting parent's conferring the benefits proposed to be conferred. The consent of the parent of the child, and the consent of the child, and the voluntary rendition of services by the child, and the companionship of the child, to which the adopting parent would not, without the contract of adoption, have been entitled, constitutes the consideration and foundation of the agreement of the adopting parent to confer specified benefits upon the adopted child. These elements are wholly lacking in the proceeding under the real facts as set out in the bill of complaint.

The only parent of the two children Willie and Devie McAllum, who consented to their adoption, was E. M.

McAllum, and he was their real father, in the actual custody of the children, then and there performing his duty toward them in their actual support.

It would be rather anomalous for the law to work out of this preceeding a contract between E. M. McAllum, in his capacity as real father, with himself as foster father, and it would be equally anomalous for the courts to find the existence of a contract based upon a valid consideration solely upon the fact that these real children of E. M. McAllum, for whom he was then and there providing, and in whose custody they then were, consented to remain in that custody, and consented to continue to show him filial respect and duty, which they already owed.

Under the circumstances, therefore, we are unable to see how any element of a contract arose by virtue of any verbal agreements between the parties outside of the so-called adoption proceedings, or out of the adoption proceedings themselves. The chancellor, in his opinion held that the decree of the court adopting the children, not appealed from, settled the question of a sufficient consideration to support the alleged contract of adoption, citing, *Adams* v. *Adams,* 102 Miss. 259. In this, we submit, the chancellor was in error.

In the first place, he erroneously assumed that a contract between the parties resulted from the alleged adoption proceedings. This was not and could not be true, if as the bill alleges, the children were the offspring of McAllum, in his legal custody, and he was entitled to their companionship and obedience.

The children, under those circumstances, had nothing that did not already belong to the father to give him in exchange for any promise on his part. The real question, on this phase of the case is not the narrow one of whether or not there was a sufficient consideration for the alleged contract of adoption; but the question as to whether or not any enforceable contract at all resulted from what took place between the father and his children, prior to the adoption proceedings or as a result of them. Clearly, no

enforceable contract arose from the oral agreements alleged in the bill to have been entered into between the father and the children; because the bill in its averments as to the then situation of the parties shows that the children neither did nor agreed to do any more than the law and their relation to the parent obligated them to do.

But if we were to look at the proceedings as purely an adoption proceeding, and as coming within the purview of the second phrase of section 542 of the Code of 1906, we submit that the complainants must still fail of their suit. For conceding for the purposes of the argument and for the moment, that the adoption proceedings were entirely valid, and expressed the thing to which the parties committed themselves, then it appears that the adopted children acquired no irrevocable right to the estate of E. M. McAllum at his death.

We submit that this conclusion is supported by the authorities. First: It is not out of harmony with the case of *Beaver* v. *Crump,* 76 Miss. 34. *Beaver* v. *Crump,* does not hold that the real relationships of the parties, and what actually passed between them may not be looked to, to determine whether or not in law and fact there was a contract resulting from the proceeding and the nature of that contract; nor, if a contract, the nature of the consideration to determine whether or not it should be specifically enforced.

The case of *Adams* v. *Adams,* 102 Miss. 259, does not militate against the position taken by the devisees under the will of this case. That case is mainly directed to the proposition that the decree of adoption cannot be collaterally attacked on any ground, excepting the want of jurisdiction, either of the subject-matter of the parties, and that oral evidence might be received as to supporting facts not disclosed from the record to validate the adoption proceedings. *Leonard* v. *Weston Lumber Company,* 107 Miss. 345, 65 So. 459, construed an adoption proceeding under the Code of 1871. *Leonard* v. *Lumber Company,* 107 Miss. 345, *supra,* is, we submit, directly in point here.

It undoubtedly holds that the decree of the court is the measure of the right of the adopted child. If so, then appellee's suit must fail, because the court, in contracting for the minors, if the decree be a contract at all, in adjudicating their *status* and rights, very plainly set forth the same.

Whatever *status* and rights are suggested in the petition are interpreted and construed and explained and defined in the decree of the court.

If the decree is valid and binding and *res adjudicata* because not appealed from as the chancellor in his opinion intimated, if he did not expressly so hold, then it binds appellee; and as such is the measure of their right.

*Amis & Dunn,* for appellee.

It is insisted that there was no consideration to support the adoption proceedings as a contract between the parties. We say in reply to this argument that this question was adjudicated by the court in that proceeding and cannot be inquired into here. *Adams* v. *Adams,* 102 Miss. 259; *Beaver* v. *Crump,* 79 Miss. 34. The rule being that the judgment in the adoption proceedings is conclusive, the cases of *Aycock* v. *Hampton,* 48 Miss. 204, and *I. C. R. R.* v. *Sanders,* 61 So. 309, cited by counsel for the appellants are unavailing even if they were pertinent. But these cases would not be pertinent, even in the absence of the adoption proceedings and the decree thereon. In *Aycock* v. *Hampton,* the court simply held that the mother of a bastard child being dead, the putative father is entitled to the custody of such child based upon the ties of nature between the putative father and his bastard child. The question of civil rights and liabilities, in such cases is not involved, except as to nurture and maintenance, which so called rights appertain to the child, whereas the right of custody based upon natural relationship belongs to the father. At common law it was not the duty of the putative father or mother to support the child, but the rule in the United States as to the mother, has been modified as in-

dicated by the case of *I. C. R. R.* v. *Sanders,* 61 So. 309, and cases cited in the note in Cyc, *supra.* But the rule at common law as to the father remains unchanged, except by statutory enactment. The putative father's statutory liability is perhaps universal in the United States, but such liability can be enforced only to the extent, and in the manner provided by the statutes of the several states. *Simmons.* v. *Bull,* 21 Ala. 501, 56 Amer. Dec. 257; *Nixon* v. *Perry,* 77 Ga. 530.

In the case of *Parsons* v. *Parsons,* 101 Wis. 76, 70 Am. St. Rep., 894, the court held that where a proper petition has been filed in adoption proceedings, the court acquires jurisdiction to determine whether the person who signs as next of kin is such, and its determination, whether based upon sufficient evidence or not, cannot be collaterally attacked for want of jurisdiction.

Again it is further contended that, admitting the validity of the adoption proceedings, still the only effect thereof was to create the same relations, in a civil sense, which exists between parents and child. That is to say the adopting father acquired such and only such rights as a father has in respect to his children born in lawful wedlock, and correspondingly the adopted children were placed upon the same footing in respect to their duties and rights towards the adopting father as if they had been born in lawful wedlock, among others being the right to inherit from the adopting parent, subject to his right to disinherit them or to limit the extent to which they should share in his estate by will or any other mode of disposition he might choose.

In other words it is insisted that the adoption did not constitute an irrevocable contract between E. M. McAllum and the complainants. This phase of the case has been so fully discussed by associate counsel, we feel that an extended discussion of it by us would be a work of supererogation. We have not been able to find a single decided case which departs from the holding that the relation which is created by adoption is contractual, and that the rights and obligations of the parties must be determined as if

the parties had contracted to stand and perform them by any other mode evidencing their agreements and undertakings.

*L. D. Spinks,* for appellee.

Coming now to the proposition that the contract evidenced by the adoption proceedings is without consideration and void because of the want of consideration, we beg to submit that we think the argument of the appellant is unsound. In the first place we are not able to subscribe to the proposition laid down by counsel to the effect that the father of an illegitimate child is entitled to its custody and control, and is entitled to receive from said child its filial obedience and services, and that any contract founded upon the filial services, obedience and associations rendered by the bastard child to its putative father is void for want of consideration.

In the first place the only case in our state where this question is discussed is in *Aycock* v. *Hampton,* 84 Miss. 204. That case passed solely upon the question as to the superior rights of the putative father and an uncle of the child. The question of sufficiency of consideration flowing from the filial obedience, services and custody rendered by the bastard to its putative father is not discussed. That case is not an authority for the proposition that the putative or natural father of an illegitimate is entitled to its custody, services and associations as a matter of right without any liability on his part to remunerate it for the services it renders to the father. The case of *I. C.* v. *Sanders,* 61 So. 309, is not in point here.

Under the averments of the bill, the custody and control of said minors as it is shown to have existed in the petition of the adoption proceedings was not such custody and control as the natural father of an illegitimate has by virtue of the case of *Aycock* v. *Hampton, supra,* nor the custody and control to which he was entitled as a matter of right under the argument of the appellants. Viewing the situation of the parties as to the time of the filing of the pe-

tition for adoption in the light of the averments of the bill, it would appear that Mr. McAllum after allowing the issue of his body to be knocked about from pillar to post through their tender childish years; after having allowed them to be taken care of by the world, in a sense; after they had lived those years of their lives when their maintenance could not be rewarded by them in the sense that they could in any manner repay their keepers in money or in services of a money value—then when these two children the issue of his body, have reached those years when they could, if such was necessary, pay for their keep in services rendered, when they had reached the point where their custody and services would be of some value to Mr. McAllum, he, Mr. McAllum, of his own volition, without being appealed to by these appellees, held out to them the advantages to flow to them if they would only come and live with him; represented to them that he would care for them, educate them, adopt them as his sole and only heirs, and that at his death they should inherit whatever property he might die seized and possessed of. Such are the averments of the bill. At the time of the adoption proceedings they were with him under and by virtue of these promises on his part to do these things by them and for them, and were not with him because of any enforcible right which he then had to their custody and services.

Further, it occurs to us that the argument of appellants in attacking the consideration in the adoption proceedings fails to take into consideration the fact that the appellees as of the date Mr. McAllum came into their custody and control were emancipated minors. Emancipation of infants, according to one well known text, signifies the release of an infant from parental domination and control. Spencer Dom. Relations, par. 475.

If, therefore, these appellees were emancipated minors as of the date they came into the custody of E. M. McAllum, as they are shown in the bill to have been, Mr. McAllum had no enforcible right to their custody and control, to their services and earnings, and the contract entered into by and

between him and these appellees whereby he obtained that which he had no right to put for the contract, it cannot be argued logically that the contract was without consideration.

Coming now to discuss the proposition, which, by the way seems to be relied on chiefly by appellants to sustain their contention, to the effect that the rights which the appellees got under and through the adoption proceedings were the same rights as they would have had, had they been born in lawful wedlock, with same limitations, and with same right in Mr. McAllum to make a will and cut them off from inheritance that he would have had had they been born to him in lawful wedlock.

This proposition is a very broad one, with many aspects to be considered. Also the direct question has never been presented in this state prior hereto, as we understand it.

The argument of the appellants fails to take into consideration, we think, the very clear distinction between the manner in which the relationship of parent and child arises in cases of children born in wedlock and in cases where the children are adopted. Where children are born in wedlock the relationship springs up co-incident with the birth of the child full grown, with all of its potency. At the birth of a child of married parents, that is in lawful wedlock, there then and there, coincident with birth, is vested in the father the paternal right of custody, and control, which follows with said child until its majority or until its emancipation. He has the right to choose its associates and environments, its plays and play fellows, the mode of its training, and the manner of its daily life. Co-existent with these rights are the liabilities devolving upon the father, the liability for its necessaries of life to maintain it in its proper station; the liability to educate it; the liability that he must answer for its acts done in the furtherance of the business of its father; and all of the various and sundry liabilities and obligations resting on the father of a child born to him in lawful wedlock. These rights and privileges, duties and obligations are vested

and imposed because of the relationship, resultants of the relationship. They are not vested and imposed because of any contract or undertaking between the father and the child, but are the legal results of the legal relationship.

In cases where the child is adopted these rights and privileges, duties and obligations are not vested and imposed in the manner in which they are discussed above. On the other hand until some, contract of adoption is entered into in some manner known to the law, by and between an adopting parent and adopted child no rights and privileges are vested in the adopting parent, and no duties and obligations are imposed upon him. But co-incident with adoption these rights and privileges, duties and obligations vest and are imposed. However, they do not result or follow because of the relationship in its proper sense, but they follow as a part of the rights and benefits, duties and obligation of a contract made under judicial sanction. In their nature they are contractual rather than resultants of a relationship. In the one case they follow a legal relationship; in the other they follow a contractual relationship.

So far as the rights of inheritance of a child born in wedlock in and to its father's estate, this right is also a result of the relationship, and the right is limited and controlled by our laws on descent and distribution. Of course, under our statutes, property descends or is inherited only in cases of intestacy. But with adopted children the right of inheritance, if any there be, is not an attribute or resultant of the relationship created by our statutes in adoption proceedings, nor does adoption of a child or a person by another give to the adopted child or person the right to inherit even in cases of intestacy. As said by the court in the case of *Beaver* v. *Crump,* 79 Miss. 36: "This statute is wholly unlike those of most of the other states of the Union."

Our statute on adoption, section 299 of Hemingway's Code, has the following language: "Shall also state in the petition what gifts, grants, bequests or benefits he proposes to make or confer, if any, upon such persons sought to be

adopted; and the court shall hear the evidence and if satisfied that the interest of the person sought to be adopted will be promoted by said adoption, may decree that such persons so adopted shall be entitled to all the benefits proposed by the petitioner to be granted and conferred."

Therefore, under our statute, as held in the case of *Leonard* v. *Lbr. Co.,* 65 So. 459, and also in the case of *Fisher* v. *Browning,* 66 So. 132, the right of inheritance of an adopted child does not follow from act of adoption, nor from the adoption proceedings. If the right of inheritance arises to an adopted child, it arises not as a result of the relationship of parent and child, but it arises and exists as a definite, specific benefit, nominated and fixed by the petition for adoption; it is one of the "gifts, grants, bequests or benefits—he proposes to make or confer, if any, upon such persons so adopted," quoting the language of the statute.

In other words under the statute, and under the construction of same as laid down in *Fisher* v. *Browning* and *Leonard.* v. *Lbr. Co., supra,* the adoption proceedings necessarily go no further than to create or bring into being the relationship of parent and child between the adopting parent and the adopted child, limited to the right of the father to custody and control of the minor, and limited to the right of the minor to expect of the father its maintenance and support, the right of heirship not being a resultant of the relationship.

We, therefore, say that when the appellants argue, as they do in their brief, they fail to take into consideration the very distinct difference in the manner in which the relationship in the two cases arises; and fail to consider that the right of inheritance of a child born in lawful wedlock is a resultant of the relationship of parent and child, and the right of inheritance of the adopted child, if any such right there be, is a specific benefit, nominated and fixed by the adopting parent under the sanction of the court.

Coming now to consider the language of the petition for adoption and the decree following the petition in the light

of the foregoing construction of the statute on adoption, and in the light of the foregoing somewhat academic observations, "head law," if you please, we will, as best we can, analyze the petition and the decree, with reference to that part thereof on which we rely to sustain our contention that through this adoption proceedings the appellees became vested with a right of inheritance that the adopting father could not *ex parte* abrogate or nullify.

Quoting from the petition for adoption: "That it is the petitioner's wish that said children may become his legal heirs, inheriting whatever property that the said E. M. McAllum may own at his death." Suppose the petition had been more verbose and in the following language: "That the petitioner, E. M. McAllum, shows unto the court that he desires to have these children and keep them in his home under the relationship of parent and child; desires to have their custody and maintenance; desires to be to them as a father and have them as to him as his children. "That, in order that the children and the court may determine as to whether or not the interest of said children will be promoted by the adoption as prayed for, he shows he wishes said children to become his sole and only heirs; that he wishes them to inherit whatever property he may own at his death; that he would, were it in his power, have already provided for them as his sole and only heirs, but, as he understands the law, he cannot adopt them as his children so as to have them with him, and he cannot adopt them as his sole and only heirs, inheriting whatever property he may own at his death, except with the sanction of this court.

"Therefore, these petitioners humbly pray the court to pass a decree allowing the said children to be adopted into the family of the said E. M. McAllum, with such rights and duties as are incident to the relation and with such benefits to accrue to said children as hereinbefore proposed, with power, on the part of the said children to take the inheritance hereinbefore proposed for their benefit." After all, isn't the meaning of the language used in the petition

tantamount to the averments next above?   We think so.

The chancellor in the written opinion which he handed down on ruling on the demurrer says: "The petition proposes as a specific benefit to them that they shall inherit whatever property the said E. M. McAllum may own at his death." And in another place: "The petition for adoption and the decree of the court thereon really goes further than simply creating the relationship of "heir" on the part of the adopted children; it specifies the right of inheritance."

We think the interpretation of the language of the petition by the chancellor is a very happy and lucid interpretation, and we are quite sure that we have not the power to make it more lucid, nor to give a more happy phraseology of his reasonable interpretation thereof.

The operative part of the decree is in the following language: "It is ordered, adjudged and decreed that the said Willie and Levie McAllum shall be adopted as the legal children and heirs of the said E. M. McAllum, with full power to inherit his property as if they were born his children in lawful wedlock."

The case of *Beaver* v. *Crump,* 76 Miss. 34, is certainly not out of line with the chancellor. The case of *Fisher* v. *Browning,* 66 So. 132, is also in line with the case of *Beaver* v. *Crump,* and cites the *Beaver* v. *Crump* case. The case of *Leonard* v. *Lbr. Co., supra,* is not an authority for the appellants.

Counsel for appellants are at great pains to try to avoid the case of *Quinn* v. *Quinn,* 49 Am. State Reports, 875, which is cited by the chancellor in his written opinion. They devote a great deal of space in their attempts to differentiate, and finally seeing the futility of their efforts they conclude, page 31 of their brief: "and also we submit that on its own facts the case of *Quinn* v. *Quinn,* is not well reasoned and is unsound." This case of *Quinn* v. *Quinn, supra,* we say, as did the chancellor, is directly in point, and it seems its reasoning is quite sound.

The case of *Bolman* v. *Overall, supra,* is also in point here because of the fact that in that case the court held

that where a party in consideration of another party rendering services on strength of a promise to make a devise to the promisee of certain property, the promisee, after having performed his part of the contract, was entitled to specific performance from the promisor. That case further said that such a contract was in the nature of a contract or promise to stand seized during life for the use of the promisee at death of promisor. *Starnes* v. *Hatcher*, a Tennessee case, reported in 117 S. W. 219.

We finally conclude on this point that in view of all these authorities the chancellor was eminently correct in his disposal of the proposition raised by demurrer to the effect that these appellees got under this contract of adoption, or adoption proceedings, the same rights and same rights only of inheritance that they would have had had they been born in lawful wedlock.

Coming now to consider what we have on the third page of our brief set up as the fifth proposition raised by argument we again reiterate that the appellant did not raise this proposition except in argument, and that, strictly speaking, the argument cannot be considered. However this may be, we contend that irrespective of whether the contract for adoption was ever carried out by the testator as he agreed to carry out, and irrespective of whether the adoption proceedings be valid or not, we are entitled to the benefits of the promises made by Mr. McAllum through and under which the appellees went to live with him, rendered to him their filial obedience, association and services, and by their labors and efforts contributed materially to the accumulation of the estate of which he died seized and possessed.

ETHRIDGE, J., delivered the opinion of the court.

On the 29th day of August, 1911, E. M. McAllum, Willie McAllum and Levie McAllum, the last two being minors, filed an *ex parte* petition in the chancery court, which petition reads as follows:

"*Ex parte* E. M. McAllum, Willie McAllum, and Levie McAllum.

"To the Honorable Jas. F. McCool, Chancellor of the Sixth Chancery Court District of the State of Mississippi:

"And now comes E. M. McAllum, a resident citizen of the county of Kemper, and state of Mississippi; also comes Willie McAllum, a minor nineteen years of age, and Levie McAllum, a minor sixteen years of age, who are joined in this petition by their next friend, E. M. McAllum, and would most respectfully show to the court the following, to-wit:

"That petitioners Willie and Levie McAllum are minor children who are now living with the said E. M. McAllum, and have so lived for several years.

"Petitioners would further show that the said E. M. McAllum has taken care of and educated the said minors, and has become greatly attached to them; and further that the said Willie and Levie McAllum have no legal parents now living, so far as known to petitioners. Petitioners would further show that the said E. M. McAllum is an unmarried man of mature years, and desires to adopt as his own children the said Willie and Levie McAllum.

"Petitioners would further show that the said E. M. McAllum is desirous of doing all in his power towards educating said children and giving them all the advantages that his means will afford; that it is the petitioner's wish that said children may become his legal heirs, inheriting whatever property that the said E. M. McAllum may own at his death.

"Your petitioners Willie and Levie McAllum would further state that they have full knowledge and have consented to said adoption, and join in the prayer of the said E. M. McAllum that the court will pass a decree allowing them to be adopted into the family of the said McAllum, and in duty bound will ever pray, etc.

"[Signed] E. M. McAllum.
"Willie McAllum.
"Levie McAllum."

On the same day a decree was entered by the chancery court sustaining the prayer of the petition, which said decree is in the following words:

"*Ex parte* E. M. McAllum *et al.*

"This day came on for hearing the petition of E. M. McAllum, Willie McAllum, and Levie McAllum, praying the court to allow the said E. M. McAllum to adopt the said Willie and Levie McAllum as his own children; and, it appearing to the court that it is proper and right that the said E. M. McAllum should adopt said children, it is therefore ordered, adjudged and decreed that the said Willie and Levie McAllum shall be adopted as the legal children and heirs of the said E. M. McAllum, with full power to inherit his property as if they were born his children in lawful wedlock.

"Done in open court at De Kalb, Miss., this the 29th day of August, 1911.

"[Signed] James F. McCool, Chancellor."

The appellees filed this bill in 1921, setting forth the above proceedings and also certain allegations of agreement between E. M. McAllum and Willie and Levie McAllum antedating the filing of the said petition and the decree of adoption above set out, in which bill it is alleged that the appellee Willie McAllum had been placed with one W. H. McLean when he was seven years old by his mother and that he had remained with McLean until he was about fifteen years old, when he was induced by E. M. McAllum to move to McAllum's place, and that the first few months that he lived with McAllum he worked with McAllum as a laborer for wages. It is also alleged that the mother of these two minors had abandoned the appellee Levie McAllum when she was about five years of age and that she had been placed by her mother with a Mrs. Alexander, a sister of E. M. McAllum, and remained with her for some months, and that Mrs. Alexander placed her with E. M. McAllum, who placed her in the home of Mrs. Sinclair, where she remained until she was about thirteen years of age, when she was taken to the home of E. M. McAllum

under an agreement by said McAllum with the said minor children (appellee Willie McAllum being then sixteen years of age) that, if they would live with him, do his bidding, and be subject to his control as though they were his natural children, he would adopt them as his children and care for them as though they were members of his family; that they entered into the service of the said McAllum under the agreement that they would become his adopted children and he their adopted father, and that he would take appropriate proceedings to have them legally adopted; that they remained in this relation for some time, that is, until Willie McAllum was about nineteen years of age, and Levie McAllum about sixteen years of age, when they told said E. M. McAllum that if he did not take legal steps to carry out the agreement they would leave him; that thereupon said E. M. McAllum filed the petition above set out, in which said minors joined as petitioners; that they continued to live with said E. M. McAllum as his children, subject in all respects to his orders and wishes, and that they labored for him, and by means of their labor he accumulated a part of his estate, but that he would not send them to school except for a few months in the year to the public school; that he sent Willie McAllum for a few months each year to the A. & M. College, but that said Willie McAllum never got beyond the preparatory department in such college; that he sent Levie McAllum to the Women's College at Columbus, Miss., for a period, but that she never got beyond the preparatory department therein.

It is further averred that after each of the petitioners reached the age of twenty-one years and had the legal right to shape their own course in life, McAllum turned them away from his premises because they would not continue in his service without being paid for their labor; that he assaulted Willie McAllum with a gun, and forbade him to ever return to his premises; that they left said E. M. McAllum under said circumstances after each had arrived at twenty-one years of age.

It is further alleged that McAllum thereafter made a will in which he willed to the appellees one dollar each, and willed his other property to the appellants. The will is made an exhibit to the bill, and bears date of May 31, 1917. E. M. McAllum died in 1921, on April 30th, and said will was probated after his death, and the appellant Putnam McLean administered on said estate with the will annexed; the executor named in the will having refused to qualify.

The bill was filed in July, 1921, and was demurred to by the appellees on many grounds which we will not set forth herein.

It is the contention of the complainants that the adoption proceedings gave them the right to inherit whatever said E. M. McAllum owned at his death, and that the will made by him conflicts with their contractual rights under the adoption proceedings and as to that is void. There are a number of contentions by the appellants in the demurrer and on appeal here, which we will not set out in view of the conclusion which we have reached.

It will be noted from the petition above set out that the petitioner E. M. McAllum represented to the court that the minors had been living with him for some years, and that he had become greatly attached to them, and that they have no legal parents now living, so far as known to the petitioner; that petitioner is an unmarried man of mature years, and desires to adopt as his own children said Willie and Levie McAllum; that he is desirous of doing all in his power to educate the said minors and to give them the advantages that his means will afford; that it is petitioner's wish that said children may become his legal heirs, inheriting whatever property said E. M. McAllum may own at his death. The minors, who are petitioners, represented that they had full knowledge and had consented to the said adoption, and joined in the prayer of the said E. M. McAllum that the court will decree that they be adopted into the family of the said E. M. McAllum. The

decree, granting the petition ordered, adjudged and decreed:

"That the said Willie and Levie McAllum shall be adopted as the legal children and heirs of the said E. M. McAllum, with full power to inherit his property as if they were born his children in lawful wedlock."

In our opinion the rights of the appellees are governed, controlled, and limited by the petition and decree, and that all antecedent agreements were merged in the agreement therein. If the articles of adoption did not contain the real agreements, it would have been necessary for the minors to have brought a bill in the nature of a bill of review within two years after attaining their majority, and made a direct attack upon the adoption proceedings.

In *Beaver* v. *Crump,* 76 Miss. 34, 23 So. 432, it was held that the rights of the parties are fixed by the decree of the court on the petition, and unless heirship was granted or was made one of the gifts, grants, or benefits proposed to be conferred, it did not exist. In that case Mrs. Crump had been adopted by one Pool. Pool had stated in his petition for adoption that he proposed to devise to her the plantation known as "the Sykes place," and to devise and bequeath to her his other property that he should not devise and bequeath to others. After the adoption proceedings and during his lifetime Pool conveyed the Sykes plantation to Mrs. Crump, but in 1896 he died without having made any will or testament. The adopted daughter Mrs. Crump, brought suit against the natural heirs of Pool, insisting that under the adoption proceedings she was entitled to all property not devised or bequeathed to others, and prayed for a specific performance of this part of the petition. The court held that the adoption proceedings did not make her an heir of Pool, and that specific performance would not lie to enforce the expectation named in the petition for adoption. The court in discussing the case and the petition said that everything except the Sykes plantation, was left for disposition at petitioner's pleasure, that the most favorable view that could be taken was that Pool

would devise his property not disposed of to Mrs. Crump, and that she acquired no vested right in any particular piece of property under the proposal to devise to her what had not been devised to others.

In the case before us the petition for adoption states that it is the wish of E. M. McAllum that Willie and Levie McAllum be made his heirs, inheriting his property at his death. This language is not sufficient to constitute a contract agreeing to give to the said Willie and Levie McAllum the property of said E. M. McAllum that he owned at his death. The decree of adoption defines definitely their right of inheritance, and that appellees shall be adopted as the legal children and heirs of the said E. M. McAllum, with full power to inherit his property as if they were born his children in lawful wedlock. The rights conferred are to right of heirship as if they were born in lawful wedlock. They do not under this decree have any other or greater power than lawful children would have. They become the heirs at law of said E. M. McAllum, and inherit only such property as he had not otherwise disposed of. A person has the legal right to will his property away from his heirs. He may, if he desires, disinherit them. They have the right only to take by inheritance that which he owns undisposed of at his death. Decisions from other states are cited in support of the contention that McAllum did not have the power to dispose of his property by will after making agreements with the appellees that he would give them his property at his death in consideration of their services and obedience. The statutes of the different states vary greatly as to adoption proceedings, and in some states it is regarded as being not a judicial proceeding, but as a legislative proceeding. In our state it is a judicial proceeding. *Beaver* v. *Crump*, 76 Miss. 34, 23 So. 432. It being a judicial proceeding in this state, the decree of the chancery court dated August 29, 1911, is the measure of the rights of the parties, and as that decree cannot in a collateral proceeding be attacked, and it appearing from the bill and the exhibits thereto that more than two years had passed after

the appellees attained their majority, and the said E. M. McAllum being dead, it was too late for a bill of review. The complainants planted their rights upon these adoption proceedings, and seek to maintain their bill upon the theory that under its terms they were entitled to the property as a matter of contract. As before stated, the prior agreements must be treated as merged in the adoption proceedings, and when we measure the rights of the appellees by the adoption proceedings, the bill must fail. The demurrer should have been sustained, and the bill dismissed. The chancellor overruled the demurrer, and consequently the judgment must be reversed, and judgment entered here dismissing the bill.

*Reversed and dismissed.*